IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| BRENNAN CENTER FOR JUSTICE AT NEW YORK UNIVERSITY SCHOOL OF LAW, | ) ) ) ) | Case No: 1:22-cv-7038 |
|  | ) |  |
| Plaintiff, | ) ) | COMPLAINT FOR DECLARATORY AND |
| - against - | ) ) | INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM |
|  | ) | OF INFORMATION ACT, 5 U.S.C. |
| U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) ) | § 552 *et seq.* |
|  | ) ) |  |
| Defendants. | ) |  |
_____ )

Plaintiff the Brennan Center for Justice at New York University School of Law ("Brennan

Center" or "Plaintiff"), by and through its undersigned attorneys, brings this action under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for declaratory, injunctive, and

other appropriate relief to compel the disclosure and release of documents from Defendants United

States Department of Homeland Security ("DHS") and United States Immigration and Customs

Enforcement ("ICE").[1]  In support thereof, Plaintiff alleges as follows:

## INTRODUCTION

1.      Plaintiff Brennan Center is a bipartisan, not-for-profit law and public policy institute

that works to reform, revitalize, and, when necessary, defend American systems of democracy and

justice.

2.      On December 7, 2021, Plaintiff submitted a FOIA Request (the "Request") to

Defendants Department of Homeland Security and U.S. Immigration and Customs Enforcement

_____

[1] This complaint does not purport to represent the position, if any, of New York University School of Law.

for records regarding their use of third-party providers for social media monitoring operations. *See* Ex. A.

3.    DHS routinely monitors individuals' social media platforms to conduct investigations, identify potential threats, and screen travelers and immigrants.[2] DHS engages vendors to support its social media monitoring efforts. However, limited information is available about the relationships between the federal government and social media surveillance contractors, and private vendors may not be subject to the same legal or institutional constraints as government agencies.

4.    The records regarding the government's social media monitoring efforts sought by the Request are essential for ensuring transparency and accountability of federal agencies with a wide-ranging mandate and a checkered history when it comes to the rights of civilians. Agency surveillance of social media is largely unregulated and because social media can expose sensitive personal information about individuals, including religious and political views, personal and professional associations, and health and sexuality, the government's monitoring of social media has the potential to stifle core freedoms, like speech, assembly, and religion.[3] Indeed, the risk is even more significant for minority faith and racial groups, since many agencies conducting social media surveillance have historically targeted minorities and their social movements.[4] Given the intersection between government oversight and constitutional freedoms, particularly for discrete and insular minorities, the public interest at stake in the release of these documents is of the utmost importance.

---

[2] Rachel Levinson-Waldman, *et al.*, *Social Media Surveillance by the U.S. Government*, BRENNAN CENTER FOR JUSTICE (Jan. 7, 2022), https://www.brennancenter.org/our-work/research-reports/social-media-surveillance-us-government.
[3] *Id.*
[4] Harsha Panduranga & Emil Mella Pablo, *Federal Government Social Media Surveillance, Explained*, BRENNAN CENTER FOR JUSTICE (Feb. 9, 2022), https://www.brennancenter.org/our-work/research-reports/federal-government-social-media-surveillance-explained.

5.     The Freedom of Information Act "focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

6.     Defendants DHS and ICE have failed to comply with their obligations under FOIA. As of the date of this filing, Defendant ICE has not issued a final determination in response to Plaintiff's Request despite closing it. Defendant DHS transferred the Request to its Office of Intelligence & Analysis ("I&A"), which subsequently closed the Request without issuing a determination or responding to the Brennan Center's administrative appeal.

7.     No Defendant has yet produced a single document.

8.     Plaintiff brings this action to compel Defendants to immediately process and release to Plaintiff all responsive records that they have unlawfully withheld.

## **PARTIES**

9.     Plaintiff Brennan Center is a nonprofit, nonpartisan law and policy institute that is focused on fundamental issues of democracy and justice. The Brennan Center's Liberty and National Security ("LNS") Program uses innovative policy recommendations, litigation, and public advocacy to advance effective national security policies that respect the rule of law and constitutional values. The Brennan Center regularly writes and publishes reports and articles and appears on media outlets to address U.S. policy issues ranging from counterterrorism efforts to voting rights to campaign finance laws. The Brennan Center is a 501(c)(3) corporation headquartered at 120 Broadway in New York, New York.

10.     Defendant Department of Homeland Security is a federal cabinet level department and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). The Office of Intelligence & Analysis is an office component within DHS. Defendant U.S. Immigration and Customs Enforcement is a component agency of DHS that enforces U.S. immigration law. Defendants have possession of and control over the documents and information requested by Plaintiff.

## JURISDICTION AND VENUE

11.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

12.     Venue in the Southern District of New York is proper under 5 U.S.C. § 552(a)(4)(B) because the Brennan Center has its principal place of business in New York City.

## STATUTORY BACKGROUND

13.     The Freedom of Information Act provides that any member of the public may request records from a United States agency. Upon receipt of a FOIA request, an agency must determine within 20 business days—or, in "unusual circumstances," by 30 business days—whether it will comply with a request and notify the requestor of its determination and reasoning in writing. 5 U.S.C. §§ 552(a)(6)(A)(i)-B(i). This determination must also timely indicate the scope of the documents the agency intends to produce and the exemptions, if any, that it will apply to withhold responsive documents.

14.     In response to a FOIA request, an agency, after engaging in a reasonable search for responsive records, including of any field offices that may possess relevant materials, must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions. 5 U.S.C. §§ 552(a)(3)(A), (C), (b)(1)-(9).

15.    Typically, a requester under FOIA must appeal agency action administratively before commencing litigation. However, if the agency has failed to abide by its obligations to issue a determination on the request or a determination on an administrative appeal within the statutory timeframe, the administrative appeal process is considered exhausted. 5 U.S.C. § 552(a)(6)(C)(i).

16.    Upon complaint, a district court can enjoin an agency from withholding records and order production of records improperly withheld. 5 U.S.C. § 552(a)(4)(B).

## FACTUAL BACKGROUND

17.    "Social media monitoring" is the use by government entities of social media platforms such as Facebook, Twitter, Snapchat, and Instagram to gather individuals' information for purposes purportedly including identifying potential threats, reviewing breaking news, collecting information about individuals and groups, conducting criminal investigations, gathering intelligence, and gauging public sentiment.

18.    Social media monitoring includes one or more of the following types of activities: 1) tracking, monitoring, or collecting information about an individual, group, or affiliation (such as a hashtag) via publicly available information; 2) using an informant, a friend of the target, or an undercover account to obtain information from a protected, private, or otherwise unavailable account or page; 3) using software like Voyager Labs' VoyagerAnalytics, products from Logically, Inc. like Logically Intelligence, or ShadowDragon products such as SocialNet or OI Monitor to monitor individuals, groups, associations or locations; or 4) issuing a subpoena, warrant, or other form of legal process to a social media platform for data held by that platform.

19.    Social media is a forum for the exchange of ideas. Platforms like Facebook and Twitter have proven to be invaluable tools for connecting and organizing around a variety of

issues and across diverse movements. In a time when social media is the "modern public square,"[5] social media monitoring by the government presents significant risks to civil liberties and civil rights.

20.    Like other types of surveillance, social media monitoring chills free expression, the exchange of ideas, collective organizing, and association. The deleterious effects of surveillance on free speech have been empirically documented.[6] Federal agencies' outsourcing of broadscale social media surveillance to third-party vendors raises additional concerns. Public information regarding the relationship between the federal government and contractors that offer social media monitoring services is limited and companies may not be subject to the same legal and institutional constraints as public agencies, weakening safeguards against abuse.[7]

21.    Publicly available records indicate that DHS engages vendors to support its social media monitoring efforts. An *Intercept* article revealed that ICE had two contracts for ShadowDragon social media surveillance software, which allows law enforcement to collect data from, *inter alia*, social media websites, Amazon, and dating apps.[8] On the federal procurement website usaspending.gov, the Brennan Center located three ICE contracts to purchase

[5] *Packingham v. N. Carolina*, 137 S. Ct. 1730, 1737 (2017) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)).
[6] *See, e.g.*, Faiza Patel, *et al.*, *Social Media Monitoring*, BRENNAN CENTER FOR JUSTICE (May 22, 2019), https://www.brennancenter.org/publication/social-media-monitoring; Jonathon W. Penney, *Chilling Effects: Online Surveillance and Wikipedia Use*, 31 BERKELY TECH L. J. 1, 117-182 (2016), https://btlj.org/data/articles2016/vol31/31_1/0117_0182_Penney_ChillingEffects_WEB.pdf, (last visited Aug. 15, 2022); Elizabeth Stoycheff, *Under Surveillance: Examining Facebook's Spiral of Silence Effects in the Wake of NSA Internet Monitoring*, 93 JOURNALISM AND MASS COMM. Q. 2, 296-311 (Mar. 6, 2016), https://journals.sagepub.com/doi/pdf/10.1177/1077699016630255#articleCitationDownloadContainer; Matthew A. Wasserman, *First Amendment Limitations on Police Surveillance: The Case of the Muslim Surveillance Program*, 90 N.Y.U. L. REV. 5, 1786-1826 (2015), https://www.nyulawreview.org/wp-content/uploads/2018/08/NYULawReview-90-5-Wasserman.pdf, (last visited Aug. 15, 2022).
[7] Levinson-Waldman, *et al.*, *supra* note 2, at 2.
[8] Michael Kwet, *ShadowDragon: Inside the Social Media Surveillance Software that can Watch Your Every Move*, INTERCEPT (Sept. 21, 2021), https://theintercept.com/2021/09/21/surveillance-social-media-police-microsoft-shadowdragon-kaseware/.

ShadowDragon products, specifically OI Monitor and SocialNet.[9] Another company, Voyager Labs, markets its materials as useful for issue areas in which DHS operates – including matters in its exclusive authority like border security.[10] In addition, DHS officials have stated publicly that it is seeking third-party vendors to enhance its social media monitoring efforts in the wake of the January 6, 2021 insurrection.[11] While those vendors have not been definitively identified, media reports reveal that DHS has had at least preliminary conversations with Logically, Inc.[12]

22.    Given the meager public information about the vendors with which DHS has contracted as well as the outsized impact of social media monitoring on the lives and constitutional liberties of everyday Americans that the records requested will illuminate, the documents sought are of the greatest public importance. To that end, disclosure of this information will contribute significantly to public understanding of the operations and activities of the federal government, specifically DHS's and ICE's social media monitoring operations and their use of third-party providers to surveil individuals online.

**PLAINTIFF'S FOIA REQUEST**

23.    Plaintiff Brennan Center submitted the FOIA Request to Defendants DHS and ICE on December 7, 2021. *See* Ex. A ("Request").

---

[9]    *See e.g.,* Contract between DHS and Panamerica Computers, Inc., USASPENDING, https://www.usaspending.gov/award/CONT_AWD_70CMSD21FR0000107_7012_HSHQDC12D00013_7001 (last visited Aug. 15, 2022); Contract between DHS and C & C International Computers & Consultants, Inc., USASPENDING, https://www.usaspending.gov/award/CONT_AWD_70CMSD20FR0000090_7012_HSHQDC12D00011_7001 (last visited Aug. 15, 2022); Contract between DHS and Software Information Resource Corp., USASPENDING, https://www.usaspending.gov/award/CONT_AWD_70CMSD21FR0000080_7012_NNG15SD74B_8000 (last visited Aug. 5, 2022).
[10]    *Border Security,* VOYAGER LABS, https://voyagerlabs.co/solutions/border-security/ (last visited Aug. 15, 2022); *National Security,* VOYAGER LABS, https://voyagerlabs.co/solutions/national-security/ (last visited Aug. 15, 2022).
[11]    Rachael Levy, *Homeland Security Considers Outside Firms to Analyze Social Media After Jan. 6 Failure,* WSJ (Aug. 15, 2021), https://www.wsj.com/articles/homeland-security-considers-outside-firms-to-analyze-social-media-after-jan-6-failure-11629025200.
[12]    *Id.*

24.    The Request seeks records relating to the nature of social media monitoring services provided or marketed by Voyager Labs, Logically, Inc., or ShadowDragon, or any of their affiliates or subordinates. *Id.*

25.    In particular, the Request sought:

1) **Recordkeeping:** All recordkeeping, logs, or digests reflecting the use of Voyager Labs, Logically, Inc. or ShadowDragon products or services for social media monitoring, or searches of social media;

2) **Purchase Agreements and Orders:** All records reflecting a contract or agreement for products or services of Voyager Labs, Logically, Inc. or ShadowDragon;

3) **Use for Purposes Other Than Background Checks:** All records reflecting the number of circumstances in which Voyager Labs, Logically, Inc. or ShadowDragon products or services were used to collect information about individuals from social media for purposes other than background checks for DHS employment;

4) **Audits:** All records or, or communications regarding, audits or internal reviews of DHS's use of Voyager Labs, Logically, Inc. or ShadowDragon products or services;

5) **Training Materials:** All training documents pertaining to Voyager Labs, Logically, Inc. or ShadowDragon products or services;

6) **Legal Justification:** All records reflecting final agency memoranda articulating the legal justification(s) for the use of Voyager Labs, Logically, Inc. or ShadowDragon products or services;

7) **Information Sharing Communications:** All communications with the Federal Bureau of Investigation, state or local law enforcement agencies, or fusion centers, regarding use of Voyager Labs, Logically, Inc., or ShadowDragon products or services or information obtained from those products or services;

8) **Nondisclosure Agreements:** All records regarding DHS's nondisclosure or confidentiality obligations in relation to contracts or use agreements with Voyager Labs, Logically, Inc., or ShadowDragon;

9) **Vendor Communications:** All email communications with representatives of Voyager Labs, Logically, Inc., or ShadowDragon concerning their social media monitoring products or services; and

10) **Internal Communications:** All email communications among DHS employees, officials, or contractors regarding social media monitoring products or services offered by Voyager Labs, Logically, Inc., or ShadowDragon.

*Id.*

26.    The Request limited the time period of the search to the window from January 1, 2016, through the date of the production of records. *Id*.

27.    Plaintiff sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. 5.5(e). *See id.*

28.    Plaintiff also sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 6 C.F.R. 5.11(k)(1) on the basis that disclosure of the requested records was in the public interest because disclosure was likely to contribute significantly to the public understanding of the activities or operations of the federal government and was not primarily in Plaintiff's commercial interest. *See id*. The Brennan Center further stated that it qualified for a fee waiver because of its role as a representative of the news media, and that it was an "educational institution" pursuant to 6 C.F.R. 5.11(d). *See id.*

## DEFENDANT DHS'S RESPONSE AND PLAINTIFF'S EXHAUSTION OF ADMINISTRATIVE REMEDIES

29.    On December 7, 2021, Defendant Department of Homeland Security acknowledged receipt of the Request and assigned it case number 2022-HQFO-00284. *See* Ex. B.

30.    On December 9, 2021, DHS wrote to the Brennan Center stating that it had transferred the Request to the FOIA Officer in the DHS Office of Intelligence & Analysis and closed the Request. *See* Exs. C & D.

31.    Two days prior, on December 7, 2021, I&A had acknowledged receipt of the Request and assigned it case number 2022-IAFO-00037. *See* Ex. E.

32.    On January 10, 2022, the Brennan Center emailed I&A, requesting an update on the estimated delivery date for the Request. *See* Ex. F.

33.    On January 12, 2022, I&A again acknowledged the Request, and invoked a ten-day extension of time to process the Request. *See* Ex. G.

34.    On March 14, 2022, the Brennan Center requested a status update on the Request, using the online portal. *See* Ex. H.

35.    By April 19, 2022, the Brennan Center had not received a response to its email or to its Request. Since well over 30 business days had passed and I&A had not issued a final determination or produced a single document, the Brennan Center submitted an administrative appeal. *See* Ex. I.

36.    As of this filing, Plaintiff still has not received any responsive records nor any other substantive reply to its Request from I&A.

37.    Exacerbating their derelict response, on August 2, 2022, I&A sent an email to Brennan Center stating the status of the request had been updated to "Closed." *See* Ex. J.

38.    Yet, simultaneously on August 2, 2022, DHS acknowledged receipt of the Brennan Center's administrative appeal. *See* Ex. K.

39.    On August 3, 2022, Sharon Deshield of DHS messaged the Brennan Center through the portal asking it to confirm receipt of I&A's closure notification. *See* Ex. L. The Brennan Center responded informing Ms. Deshield that they were still awaiting a substantive response from I&A on their request. *Id.*

40.    Despite its clear obligation under FOIA, Defendant DHS's Office of Intelligence & Analytics has not provided any substantive determination in response to the Request nor released any records responsive to the Request within the statutory timeframe.

41.    Because Defendant DHS has not complied with the statutory time limits set forth in the FOIA statute, Plaintiff's administrative remedies are considered exhausted under 5 U.S.C. § 552(a)(6)(C)(i).

### DEFENDANT ICE'S RESPONSE AND PLAINTIFF'S EXHAUSTION OF ADMINISTRATIVE REMEDIES

42.    On December 7, 2021, Defendant Immigration and Customs Enforcement acknowledged receipt of the Request and assigned it case number 2022-ICFO-02964. *See* Ex. M.

43.    On January 12, 2022, the Brennan Center sent an email to ICE, because it had not received any documents or a notice invoking an extension pursuant to FOIA. *See* Ex. N.

44.    On January 13, 2022, ICE acknowledged the Request and belatedly invoked a ten-day extension to respond. *See* Ex. O.

45.    On March 14, 2022, the Brennan Center sent a message through the DHS PAL portal, requesting an update on the status of the Request. *See* Ex. P.

46.    By April 19, 2022, the Brennan Center had not received a response to its email nor to its Request. Since well over 30 business days had passed and ICE had not issued a final determination or produced a single document, the Brennan Center sent a letter of appeal. *See* Ex. Q.

47.    On May 17, 2022, the Brennan Center followed up with ICE seeking an update on the status of their appeal. *See* Ex. R.

48.    On June 2, 2022, ICE emailed the Brennan Center stating the status of the ICE Appeal had been updated to "In Process."  Ex. S.

49.    On July 12, 2022, without issuing any response to the administrative appeal, ICE informed Plaintiff that the Request had been closed. *See* Ex. T.

50.    As of the filing of this Complaint, ICE has still not issued a substantive response to the administrative appeal.

51.    As of the filing of this Complaint, Plaintiff still has not received any responsive records or any other substantive reply to its Request from ICE.

52.    Despite its clear obligation under FOIA, Defendant ICE has not provided any substantive determination in response to the Request nor released any records responsive to the Request within the statutory timeframe.

53.    Because Defendant ICE has not complied with the statutory time limits set forth in the FOIA statute, Plaintiff's administrative remedies are considered exhausted under 5 U.S.C. § 552(a)(6)(C)(i).

### CAUSE OF ACTION

**(Violation of Freedom of Information Act)**
**5 U.S.C. § 552(a)**
**Against All Defendants**

54.    Plaintiff incorporates the above paragraphs as if set forth fully herein.

55.    Defendants DHS and ICE have a legal duty under FOIA to determine whether to comply with a request within 20 days after receiving the Request or within 30 days after invoking an extension. Defendants DHS and ICE also have a legal duty to timely notify the requestor of the agency's determination and the reasons therefore.

56.    The Brennan Center has a legal right under FOIA to obtain the agency records it requested in the Request. There is no legal basis for Defendants' failure to timely respond to Plaintiff's Request and provide all records responsive to the Request to Plaintiff.

57.   Defendants have violated 5 U.S.C. §§ 552(a)(6)(A)-(B) and applicable regulations promulgated thereunder by failing to determine whether to comply with Plaintiff's Request and communicate such determination to Plaintiff within 30 days.

58.   Defendants DHS and ICE's failure to timely release agency records in response to Plaintiff's Request has violated 5 U.S.C. § 552(a)(3)(A).

59.   Defendants DHS and ICE have violated 5 U.S.C. §§ 552(a)(3)(C)-(D) by failing to make reasonable efforts to search for records responsive to Plaintiff's Request.

60.   5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiff Brennan Center because Defendants DHS and ICE continue to flout FOIA and improperly withhold agency records. Because Defendants' refusal to respond to Plaintiff's Request prevents Plaintiff from educating the public and increasing public awareness about DHS and ICE's social media monitoring operations, Plaintiff will continue to suffer irreparable injury from Defendants' withholding of government documents responsive to Plaintiff's Request in defiance of FOIA mandates.

61.   28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendants' improper withholding of agency records in violation of FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the Brennan Center respectfully requests that the Court award it the following relief:

A.      Enter judgment that Defendants' failure to determine within the statutorily appointed 30 days whether to comply with the Request and timely notify Plaintiff of such determination and its reason violates FOIA;

B.      Enter judgment that Defendants' unlawful withholding of the records requested violates FOIA;

C.      Enter an order requiring each Defendant to immediately release any and all responsive and not otherwise exempt records to Plaintiff;

D.      Award Plaintiff its reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.      Grant such further relief as the Court may deem just and proper.


Dated: New York, New York
          August 18, 2022

                                        Respectfully submitted,


                                        */s/ Nimra H. Azmi*
                                        Nimra H. Azmi
                                        DAVIS WRIGHT TREMAINE LLP
                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY 10020
                                        Phone: (212) 402-4072
                                        nimraazmi@dwt.com

                                        Thomas R. Burke (*pro hac vice forthcoming*)
                                        DAVIS WRIGHT TREMAINE LLP
                                        505 Montgomery Street
                                        San Francisco, CA 94111
                                        Phone: (415) 276-6500
                                        thomasburke@dwt.com

                                        *Counsel for Plaintiff The Brennan Center For Justice
                                        at New York University School of Law*